```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KIMBERLY LENHERR,<br><br>          Plaintiff,<br><br>     v.<br><br>THE MOREY ORGANIZATION, INC.,<br>et al.<br><br>          Defendants. | Civil No. 13-4731 (NLH/KMW)<br><br>OPINION |

**APPEARANCES**:

JOSEPH S. LUKOMSKI
ROVNER, ALLEN, ROVNER, ZIMMERMAN, LUKOMSKI & WOLF, ESQS.
411 ROUTE 70 EAST
SUITE 100
CHERRY HILL, NJ 08034-2414
     On behalf of plaintiff

STEVEN J. FRAM
3501 BOARDWALK
WILDWOOD, NJ 08260
     On behalf of defendants

**HILLMAN, District Judge**

Presently before the Court is the motion of defendants for summary judgment on plaintiff's claims resulting from injuries she sustained when she slipped and fell while a patron at defendants' water park. For the reasons expressed below, defendants' motion will be denied without prejudice to their right to refile their motion as indicated in this Opinion.

                              **BACKGROUND**

On August 10, 2011, plaintiff, Kimberly Lenherr, visited

defendants'[1] Raging Waters water park in Wildwood, New Jersey with her children.  Around 5pm that day, plaintiff wanted to go on the Sky Pond ride with her daughter.  In order to get to that ride, they had to pass by the landing area of the Speed Slide ride.  The Speed Slide ride requires riders to use blue mats, which are stored in a corral across the walkway from the landing pool.  Speed Slide riders take a mat from the corral, walk with the mat to the top of the ride, slide down on the mat, land in the pool, take it with them out of the pool, down two, yellow-lined steps, and then either hand it to the lifeguard specifically in charge of collecting the mats or put it back in the corral.

   On her way to the Sky Pond, plaintiff was carrying a double tube which was required for that ride.  Plaintiff attempted to circumvent the crowded walkway at the base of the Speed Slide ride by going to the left of the walkway and walking up and along the two steps of the Speed Slide landing pool.  Plaintiff claims that when she went to step up on the steps, she stepped on a mat used for the Speed Slide ride.  Plaintiff claims that she slipped on the mat and fell to the ground, causing her to suffer a fractured dislocation of her left ankle that required

---

[1] Defendants are The Morey Organization, Inc., Morey's Pier, Inc., Raging Waters Mariner's Landing Partnership, Raging Waters Theme Park at Mariner's Landing, Mariner's Landing, Inc., and Fred J. Langford.

two surgeries with the implantation of plates and screws.

Defendants' surveillance video captured the few seconds before plaintiff's fall and a few minutes after it.[2] Defendants dispute that plaintiff slipped on a mat because no mat is visible in the video directly prior to her fall. Defendants also argue that even if plaintiff did slip on a mat, it must have fallen in front of her only seconds before. Plaintiff counters that the video quality is poor, and that it is unclear how long the mat was on the steps before she slipped on it.

To prove that defendants breached their duty of care to plaintiff and are responsible for her injuries, plaintiff proffers the testimony of an engineer. The engineer contends that defendants breached their duty of care in two ways: (1) by not providing a specific warning to Speed Slide riders to not leave the mats unattended on the ground, and (2) by not employing a second guard to collect all the Speed Slide riders' mats when the ride was very crowded.

Defendants have moved for summary judgment in their favor, arguing that plaintiff is required to present expert testimony in order to sustain her negligence claim against them, but plaintiff's expert is not qualified under Daubert v. Merrell Dow

---

[2] Plaintiff contends that defendants spoliated evidence by not retaining more of the surveillance video than only a few seconds before plaintiff's fall. The Court will address this issue at a future time, if necessary.

3

Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Because plaintiff does not have a qualified expert, defendants argue that her claims fail as a matter of law.  Plaintiff counters that she does not need an expert to support her claims, but even if she does, her expert is properly qualified under Daubert to provide expert testimony.

During the pendency of defendants' motion, the New Jersey Supreme Court issued a decision clarifying the scope of the "mode-of-operation" principle to slip-and-fall cases in establishments that encourage self-service on the part of a customer.  Under the mode-of-operation rule, the typical burden of proof is shifted from the plaintiff to the defendant, with the business invitee receiving an inference of negligence without having to prove that the business owner had actual or constructive notice of the dangerous condition that caused the accident.  See Prioleau v. Kentucky Fried Chicken, Inc., 122 A.3d 328, 330 (N.J. 2015).  The parties each submitted supplemental briefs as to whether the mode-of-operation rule is applicable to this case.  Plaintiff argues that it is; defendants argue that it is not.

As discussed below, the Court finds that the mode-of-operation rule applies to this case, and defendants' motion for summary judgment as it is structured now will be denied without prejudice.  Defendants will be afforded leave to refile their

4

motion in the context of the mode-of-operation standard.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. As detailed in plaintiff's amended complaint, plaintiff is a citizen of Pennsylvania, and defendants are citizens of New Jersey. (Docket No. 9.)

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary

5

judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.  Analysis**

In the typical case where a business invitee is injured on a business's premises, the business is liable in negligence to the invitee if the invitee proves that the business had actual or constructive knowledge of the dangerous condition that caused

6

the accident. <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 122 A.3d 328, 335 (2015) (citations omitted); <u>Bozza v. Vornado, Inc.</u>, 200 A.2d 777, 779 (N.J. 1964) ("[A] proprietor's duty to his invitee is one of due care under all the circumstances. Thus, the defendant must use care not to injure plaintiff by negligent activity. Where invitees have been injured by a dangerous condition on the premises of a proprietor, our cases have stressed the proposition that the proprietor is liable for injuries to an invitee if he actually knew of the dangerous condition or if the condition had existed for such a length of time that he should have known of its presence.").

    The mode-of-operation principle substantially alters that standard by giving rise to "a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." <u>Prioleau</u>, 122 A.3d at 335 (citations omitted). The mode-of-operation rule was developed in relation to businesses that require customers to serve themselves, such as using self-service beverage dispensers or self-selecting produce from bins. <u>Id.</u> (discussing <u>Bozza</u>, 200 A.2d at 780 (customer slipped on sticky substance in self-service cafeteria area); <u>Wollerman v. Grand Union Stores, Inc.</u>, 221 A.2d 513, 514 (N.J. 1966) (customer slipped on a green bean, which was sold from an open bin on a self-service basis); <u>Nisivoccia v. Glass Gardens, Inc.</u>, 818 A.2d 314, 315 (N.J. 2003)

7

(customer slipped on a grape which was being displayed in an open-top, vented plastic bag that permitted spillage)).  The rule was developed out of equitable considerations in circumstances where, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents.  Nisivoccia, 818 A.2d at 316.

Because the long-standing mode-of-operation rule had been inappropriately expanded over the years,[3] the New Jersey Supreme Court in Prioleau reestablished the rule's narrow scope by deriving four principles from its survey of cases that have considered whether the mode-of-operation doctrine applies:

> (1) First, the mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk.  The distinction drawn by these cases is sensible and practical.  When a business permits its customers to handle products and equipment, unsupervised by employees, it increases the risk that a dangerous condition will go undetected and that patrons will be injured.  Thus, the mode-of-operation rule is not a general rule of premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model.

---

[3] The New Jersey Supreme Court noted, "The mode-of-operation charge that has been in use since 1970, Model Jury Charge (Civil) 5.20F(10), neither reflects recent jurisprudence regarding the rule nor clearly explains the purpose and application of the rule.  We therefore urge the Model Civil Jury Charge Committee to review the model charge." Prioleau v. Kentucky Fried Chicken, Inc., 122 A.3d 328, 339 (N.J. 2015).

> (2) Second, the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities.
>
> (3) Third, the mode-of-operation rule is not limited to cases in which customer negligence created the dangerous condition; it also applies to self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself. Accordingly, the mode-of-operation charge may be given even in the absence of evidence that the carelessness of the plaintiff, or another patron, gave rise to the dangerous condition.
>
> (4) Fourth, if the mode-of-operation rule applies, it affects the parties' burdens of proof in two respects. The rule relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition. It also gives rise to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed. Thus, if the rule applies in a particular case, it substantially alters the ordinary allocation of the burdens between the parties.

Prioleau, 122 A.3d at 338-39 (citations omitted).

In applying these four principles to the case before it, the New Jersey Supreme Court found that the trial court's application of the mode-of-operation rule was in error. Id. at 339. There, the plaintiff walked into a fast-food restaurant from the street, briefly stopped at the counter, and then proceeded directly to the restroom. The plaintiff slipped and fell in the area by the kitchen door and the restrooms. The court found that there was no evidence that the location in

9

which the plaintiff's accident occurred - the section of the restaurant traversed by plaintiff as she walked from the counter to the restroom - had the slightest relationship to any self-service component of the defendants' business. Id. The court further explained why the mode-of-operation doctrine was inapplicable:

> The theory offered by plaintiff to justify the mode-of-operation charge, that oil and grease are used in cooking at the restaurant and that managers regularly examined the floor, establishes no nexus to customer self-service or related business operations. If the accident occurred because restaurant employees tracked oil and grease from the kitchen to the restroom area, it resulted from the preparation of food in a kitchen area off limits to patrons, a component of the business in which customers played no part. While that evidence might support a finding that a plaintiff need not show actual or constructive notice because the condition was created by defendant or its employees, it does not implicate the mode-of-operation rule. Nor does plaintiff's alternative theory of negligence that patrons tracked water from the outdoors into the restaurant on a rainy evening bear any relationship to self-service activities. The potential for customers to track water into a building during inclement weather is not contingent on a defendant's business model; that risk exists in virtually any facility that admits patrons from public sidewalks or parking areas into its facility. Thus, plaintiff's second theory of negligence does not support the jury charge given by the trial court.

Id. (citations omitted).

With these parameters of the mode-of-operation doctrine in mind, it is evident that the circumstances of this case warrant the doctrine's application:

(1) The business model of the water park is the epitome of self-service. For the Speed Slide ride, patrons handle their

10

own mats, walking with them from the corral, up to the top of the slide, down the slide, through the landing pool, out of the pool, and down the steps to the walkway. Until the mat guard collects the mats from the riders, or the riders themselves place the mats in the mat corral, the riders maintain control over the mats. This model appears to be the same for at least the Sky Pond ride, for which plaintiff was carrying a double tube along the pedestrian walk way.

(2)   Plaintiff's accident occurred in a self-service area. Plaintiff claims that she slipped on an unattended mat on the steps of the Speed Slide landing pool. Patrons are in control of their mats in that area. To address defendants' contention that plaintiff did not slip on a Speed Slide mat, plaintiff was still engaged in a self-service activity in a self-service area by carrying a double tube on route to the Sky Pond ride.

(3)   The dangerous condition was caused by either another customer who dropped the mat, the mat guard's inability to handle the volume of riders, or the inherent quality of the intended-to-be-slippery mat. The mode-of-operation rule is applicable to each of these causes. To address defendants' contention that plaintiff did not slip on a Speed Slide mat, the mode-of-operation rule is applicable even in the absence of evidence that the carelessness of plaintiff, or another patron, gave rise to the dangerous condition. It is in the inherent

11

nature of the business model that requires patrons to handle bulky and slippery equipment in a crowded and wet environment that implicates the rule.

(4) The inference of negligence regarding the dangerous condition at the water park is equitable because, as a matter of probability, a dangerous condition is likely to occur as a result of the business's nature or the property's condition.

The Court emphasizes that the application of the mode-of-operation rule to this case does not make "the proprietor an insurer" for plaintiff's well-being that requires an automatic judgment in plaintiff's favor. See Bozza, 200 A.2d at 780 (citation omitted). Moreover, that a water park poses a greater risk of injury to its patrons than another type of business simply because of the inherent nature of the business is not enough, by itself, to impose the mode-of-operation doctrine. See Prioleau, 122 A.3d at 339 n.6 (disagreeing with the appellate division dissenting judge's view that the rule applies whenever there is a risk of injury inherent in the nature of the defendant's operation). Indeed, like in Prioleau, if plaintiff fell in the area leading to the restroom, rather than while engaging in self-service activities, the analysis would be very different.

The application of the mode-of-operation rule only relieves plaintiff of having to show actual or constructive notice of the

dangerous condition.  Nisivoccia, 818 A.2d at 317.  The burden of production is shifted to defendants, who may avoid liability if they show that they did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed."  Id. (citation omitted).  "The ultimate burden of persuasion remains, of course, with the plaintiff."  Id.

Like patrons who fill their own drinks at the soda dispenser at a restaurant or select their own grapes or green beans from an open container in the supermarket, patrons of the water park serve themselves with the apparatus of the water park:  patrons retrieve a mat from the storage area, carry it to the top of the water slide, use it to slide down the slide, and carry it out of the exit pool, down two stairs, and hand it to the mat lifeguard or return it to the mat corral themselves. The patrons at the water park also walk with tubes from one attraction to another, which is what plaintiff was doing when she fell.  Accordingly, plaintiff is entitled to an inference of negligence and is relieved of the obligation to prove that defendants had actual or constructive notice of the dangerous condition that caused her accident.  It is now defendants' burden "to produce proof of performance of their duty of due care commensurate with the kind and nature of their business," including "proof of the measures they took to deal with the probability that" water park patrons could slip and fall on mats

13

or otherwise injure themselves by virtue of carrying around their own mats and tubes. Bozza, 200 A.2d at 780-81.

To that end, defendants are invited to renew their motion for summary judgment, focusing on their burden under the mode-of-operation rule. In response, plaintiff must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial as to defendants' proof of their performance of their duty of due care. If plaintiff plans to rely upon her proposed expert in opposition to defendants' motion, the Court cannot issue an advisory opinion at this time as to whether plaintiff's expert is qualified to opine on the sufficiency of defendants' duty of care.[4] The Court cautions, however, that the use of an expert requires the expert to follow

---

[4] In her opposition to defendants' motion for summary judgment, plaintiff contends that a layperson's common knowledge is sufficient to establish the duty of care in this case. It is important to note, as pointed out by defendants, that because water parks are strictly regulated, see Carnival-Amusement Rides Safety Act, N.J.S.A. 5:3-31 to -59, at least one New Jersey court has determined that expert testimony is required to establish that a water park breached its duty of care to a patron who was injured on a water-based amusement when another patron stepped on her toe. Velasquez v. Land of Make Believe, No. A-0273-11T3, 2012 WL 986982, at *2 (N.J. Super. Ct. App. Div. Mar. 26, 2012) ("Contrary to plaintiffs' arguments, jurors would not be familiar with this comprehensive regulatory scheme. Permitting plaintiffs to present their lay opinions as to whether defendants should have operated the park in a particular fashion would plainly invite jury speculation. Absent an expert, there would be no proof that defendants' staffing level at the time of the incident, or the manner in which the attraction was operated, violated the regulatory requirement.").

the Federal Rules of Evidence Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 (1993). See Heller v. Shaw Indus., Inc., 167 F.3d 146, 149 (3d Cir. 1999) (explaining that under Daubert, expert testimony must be based only on a reliable and scientifically valid methodology that fits with the facts of a case, including (1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community).

## CONCLUSION

    Because the Court has determined that the mode-of-operation principle applies to the circumstances of this case, defendants' motion for summary judgment in its current form must be denied. Defendants may refile their motion for summary judgment to address the mode-of-operation standard.

    An appropriate Order will be entered.


Date: December 23, 2015          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.